WESTERN UNION TELEGRAPH CO. V. NAGLE & WINN.

No. 1349.

**1. Telegraph Company—Liability—Cipher Message.**

The rule quoted in Daniel v. Telegraph Company, 61 Texas, 457, that where the import of a telegraphic message is wholly unknown to the company's agent to whom it is delivered for transmission, the sender, upon a breach of the contract to transmit and deliver, can recover only nominal damages, or the amount paid for sending the message, does not apply when from the face of the telegram, or from information derived from any other source, the agent receiving the message has notice that it relates to a matter of business and is of importance.

**2. Same—Case Stated.**

For facts and circumstances held sufficient to charge a telegraph company with notice of the business character and importance of a message partly in cipher, sent by a cotton buyer, and containing an order for the purchase of cotton, see the opinion.

**3. Same—Negligence—Unrepeated Message.**

Where a telegraph company is guilty of negligence in wholly failing to deliver a telegram, it is not protected from liability by the stipulation requiring the message to be repeated.

**4. Same—Damages—Prospective Profits.**

Negligence in failing to deliver a telegram containing an offer to purchase cot-

ton will render the telegraph company liable for the loss of prospective profits where it is shown that if plaintiffs had received the message they would have accepted the offer, and would have bought and shipped the cotton at a less price than that offered.

APPEAL from the County Court of Travis. Tried below before Hon. WM. VON ROSENBERG.

*Walton & Hill* and *Geo. Fearons*, for appellant.

*West & Cochran*, for appellees.

KEY, ASSOCIATE JUSTICE.—In the court below appellees recovered a judgment against appellant for $500, the correctness of which depends, in the main, upon the liability of appellant for consequential damages for a failure to transmit and deliver, as it agreed to do, the following telegram:

Austin, Nov. 13, 1893.

To N. J. Nagle, care W. J. Crow,
            Henderson, Texas.
    Kammerer renews orders Blunt Confess Cowardice· Alack Bluffing each Conclave Album Concise Alarming.

(Signed) Jos. B. WINN.

If this message had been received by N. J. Nagle, who was a member of the firm of Nagle & Winn and understood the cipher in which it was, in part, written, he would have understood it (as it was intended) to mean, that E. P. Kammerer, a cotton buyer in Galveston, Texas, had submitted an offer, as, in fact, he had done, to purchase five hundred bales of cotton, of designated grades and at stated prices; and would have immediately accepted said offer, for the benefit of the firm, and bought and shipped the cotton required to fill it, at a price so much less than that offered by Kammerer as would have resulted in a net profit to appellees of $500.

Conceding the correctness of the rule quoted in Daniel v. Telegraph Co., 61 Texas, 457: "Where the import of a telegraphic message is wholly unknown to the company's agent to whom the same is delivered for transportation, it cannot be presumed that he had in view any pecuniary loss as the natural or probable result of a failure to send such message; and in such case, upon a breach of the contract to transmit and deliver, the sender can recover only nominal damages, or to the amount paid for sending the message;" still, we do not think that rule should apply when from the face of the telegram, or from information derived from any other source, the agent receiving the message has notice that it relates to a matter of business and is of importance. Under the decisions in this State, the rule for the measure of damages for a breach of contract announced in Hadley v. Baxendale, 9 Exch., 341, so often quoted and approved by courts and text-writers, to the effect that such damages only are recoverable as naturally result from the breach, or as

may reasonably be supposed to have been in contemplation of the parties when the contract was made, does not mean, in actions for damages caused by a failure to deliver a telegram, that the telegraph company, or its agent, must know the details of the matter to which the telegram relates. For instance, in Telegraph Co. v. Adams, 75 Texas, 532, the message read: "Clara, come quick. Rufe is dying." Clara was the wife of Adams, and Rufe was her brother; and the Supreme Court sustained a recovery for Mrs. Adams' mental anguish caused by not being with her brother at and immediately before his death. The company's contention was that, as it had no notice of the relationship existing between Clara and Rufe, her mental anguish could not have been contemplated by it, as a result of a breach of the contract, when the same was made. Speaking for the court, Justice Henry said: "It is well known to the public, and cannot be unknown to telegraph companies, that the utmost brevity of expression is cultivated in correspondence by telegraph. It is as well known that that mode of communication is chiefly resorted to in matters of importance, financially and socially, requiring great dispatch. When such communications relate to sickness and death there accompanies them a common sense suggestion that they are of importance, and that the persons addressed have in them a serious interest. It would be an unreasonable rule, and one not comporting with the uses of the telegraph, to hold that the dispatcher will be released from diligence unless the relations of the parties concerned, as well as the nature of the dispatch, are disclosed. When the general nature of the communication is plainly disclosed by its terms, instead of requiring the sender to communicate to the unwilling ears of the busy operator the relationship of the parties concerned, a more reasonable rule will be, when the receiver of the dispatch desires information about such matters, for him to obtain it from the sender, and if he does not do so, to charge his principal with the information that inquiries would have developed."

And in Telegraph Co. v. Edsall, 74 Texas, 333, where the telegram related to a matter of business, the same judge said: "When notice of the main fact was given, we think the defendant was chargeable with notice of every incidental fact that would attend the transaction that it could then have ascertained by the most minute inquiry. Notice of the main purpose was sufficient to put it upon inquiry as to the attendant details, and it is chargeable with all it could have learned by such inquiries."

In the case at bar appellant's agents in charge of its office in Austin knew that appellees were engaged in the business of buying and selling lot cotton f. o. b. at various points in the State, with headquarters at Austin. Three times per day appellant's agents delivered to appellees the market reports; and they had previously been told that it was important that all messages from and to appellees should be sent and delivered with dispatch; and when the message in question was carried to the office, Winn, the sender, marked it "rush," and told Parker, the

manager of appellant's Austin office, to whom he delivered it, "to please rush it, as it was very important and to get an answer by wire as soon as possible." Parker, testifying as a witness for appellant, said that it did not appear by the check on the message that he received it, personally, although he may have done so and handed it to the receiving clerk for his check; that he did not then know the meaning of the message, but would suppose it referred to the cotton business. He also stated that previous to November 13, 1893, appellees had sent numerous messages to and received numerous messages from Kammerer.

These facts, in connection with the words, "Kammerer renews orders," in the beginning of the message, takes this case out of the general rule as to cipher telegrams, and brings it within the doctrine announced in the Edsall and Adams cases cited and quoted from above. In support of the latter doctrine see Telegraph Co. v. Sheffield, 71 Texas, 570; Telegraph Co. v. Williford, 2 Texas Civ. App., 574; Telegraph Co. v. Bowen, 84 Texas, 478; Mitchell v. Telegraph Co., 5 Texas Civ. App., 527; Telegraph Co. v. Moore, 76 Texas, 68; Potts v. Telegraph Co., 82 Texas, 545; Telegraph Co. v. Blanchard, 68 Ga., 299; Telegraph Co. v. Lathrop, 131 Ill., 575; Hadley v. Telegraph Co., 115 Ind., 191; Manville v. Telegraph Co., 37 Iowa, 214.

Appellant transmitted the message to its relay office in Galveston, where it was received and forwarded by one Phillips, who has since then been discharged by appellant on account of drunkenness. It was not forwarded to Henderson, Texas, but was sent to Sanderson, Texas, and consequently was never delivered to the addressee. These facts warrant the conclusion that appellant was guilty of negligence; and, therefore, negligence being proved against it, it is not protected against liability by the stipulation requiring messages to be repeated. It could not contract so as to relieve itself from liability for damages caused by its own negligence. Telegraph Co. v. Linn, 87 Texas, 7.

Under the facts alleged and proved by appellees, we do not think the damages recovered are any more remote and uncertain than those allowed in Telegraph Co. v. Sheffield, 71 Texas, 570, and Telegraph Co. v. Bowen, 84 Texas, 487; nor than are frequently recovered for mental anguish, where the telgram relates to sickness or death.

No reversible error has been pointed out, and we affirm the judgment of the County Court.

*Affirmed.*

Delivered November 13, 1895.